IRENE M. MASSUCCO v. DOMINICO TOMASSI.

May Term, 1905.

Present: ROWELL, C. J., TYLER, MUNSON, START, WATSON, HASELTON, and POWERS, JJ.

Opinion filed November 9, 1905.

*Breach of Promise to Marry—Evidence—Validity of Foreign Marriage—New Trial—Accident—Deprivation of Day in Court—V. S. 1662.*

In an action for breach of promise to marry, the plaintiff may show, by defendant's declarations and by a witness who claims to have knowledge on the subject, the amount of defendant's property at the time of the alleged promise.

It is not error to allow a priest, whom the court found to have the requisite knowledge, to testify that in Italy a religious ceremony alone did not constitute a legal marriage.

It is not error to permit plaintiff to testify that, while she and defendant were consulting the priest, defendant asked the priest whether plaintiff could marry, and that the priest said she could, as she was 21 years old.

It was not error to permit plaintiff to testify that, except the religious ceremony, no marriage ceremony was ever performed.

It was not error to permit plaintiff to testify on re-examination, after having testified that she considered herself defendant's wife, that she did not claim to be his legal wife, having been married only in church.

The power of the Supreme Court to grant new trials, under V. S. 1662, is of broad scope, and without limitation as to the grounds upon which such new trials may be granted.

An accident is an unforeseen and unexpected event, occurring external to the party affected by it, and of which his own agency is not the proximate cause, whereby he unwillingly loses some legal right, or becomes subject to 'some legal liability, and another person acquires a corresponding legal right, which it would be unconscionable for the latter to retain.

In a petition for a new trial, on the ground that the petitioner was prevented by accident from making his defence, it appeared that the petitioner failed to appear in court upon the trial of his case because of his sickness in Italy and the death of his father there. *Held*, that the petitioner had been deprived of his day in court by accident, and that he was entitled to a new trial under V. S. 1662.

ASSUMPSIT for breach of promise to marry. Plea, the general issue, and notice. Trial by jury at the March Term, 1904, Washington County, *Stafford*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

The defendant excepted to allowing a certain witness to testify that when defendant came to her with the proposal of marriage, he said he was worth $30,000; to the plaintiff being allowed to testify that, while negotiations were going on between herself and defendant relative to the contemplated marriage, he told her that the reason why a civil marriage was necessary was "in regard to the property," and because marriage by the church alone was not so strong as marriage by

both church and civil authority; to the plaintiff being allowed to testify that, when she and defendant together were consulting with the priest about getting married, defendant asked the priest whether the plaintiff could get married, and that the priest answered that, being twenty-one years old, she could; to the plaintiff being allowed to testify that, except the religious ceremony already referred to, no marriage ceremony was ever performed between herself and defendant; to plaintiff being allowed to testify, on re-examination, after having testified that she considered herself defendant's wife, that she did not claim to be his legal wife, having been married only in church; to an Italian priest being allowed to testify that a marriage by religious ceremony alone did not constitute a legal marriage in Italy at the time in question,—the court having found the witness duly qualified.

At the close of the evidence defendant moved for a verdict upon the grounds that "the plaintiff says she was married, and that the priest gave her a certificate; that the parties considered themselves legally married; that she still says she is defendant's wife; that she lived with him as such in Vermont, and having done so under the form of a marriage, cannot bring this action; that if it came to her attention and knowledge that the marriage was not legal, and she continued to cohabit with him, she cannot maintain this action; that she only claims that the civil marriage would make it stronger, not that it would not be a valid marriage without it."

This motion was overruled, to which defendant excepted.

The defendant also excepted to that portion of the charge "as to the relation that existed between the plaintiff and the defendant as an element of damage"; claiming that "under the circumstances in which they went to living together it would not be an element." That portion of the charge was as follows: "In estimating the damages, you will consider the

rank and condition in which each of the parties stood; you will consider what advantage to her the marriage would have been, socially, and in a pecuniary way; you will consider what advantage it would have been to her to have him marry according to his promise, at the time he agreed to do so, and how much she has lost by his breach of that promise. And, in considering that question, you will have a right to consider— if you find it to be the fact—that she lived with him as his wife, gave herself to him as his wife, in reliance upon his promise to marry her—you have a right to consider that as an element of damage, with the other elements in the case. Damages are intended always as compensation, and it is for you, in your sound judgment, to say what sum of money will fairly compensate the plaintiff for defendant's breach of his promise, so that, so far as money will do it, she will be made whole for his not having done what he said he would do."

The defendant also brought his petition for a new trial, under V. S. 1662, to the Supreme Court for Washington County at its January Term, 1905. Said petition was heard on testimony taken and filed, at the May Term, 1905, together with defendant's exceptions. The opinion states the substance of said petition, and of the testimony taken in support thereof.

*Lord & Carlton* for the plaintiff.

The court properly charged the jury on the question of damages. Sutherland Damages, §§ 984-985; *Jennette v. Sullivan*, 63 Hun. 361; *Trammell v. Vaughn*, 158 Mo. 214; *Leighe v. Payne*, 102 Iowa 581; *Sheehan v. Barry*, 27 Mich. 217; *Civil v. Wallace*, 24 N. J. L. 291; *Whalen v. Laryman*, 18 Am. Dec. 157; *Sherman v. Ransom*, 102 Mass. 395; *Kelly v. Riley*, 102 Mass. 106.

*J. P. Lamson*, and *A. M. Sartorelli* for the defendant.

TYLER, J. Action for alleged breach of promise to marry. Upon an examination of the defendant's exceptions we find none of them sustainable as ground for a reversal of the judgment rendered by the court below. It was competent for the plaintiff to show by her own testimony what the defendant told her, and by the testimony of a witness who claimed to have knowledge upon the subject, what the amount of the defendant's property was at the time of the alleged promise.

An Italian priest was permitted to testify that a marriage by religious ceremony alone did not constitute a legal marriage in Italy. In this there was no error, as the record shows that the court first found that the witness was duly qualified to testify upon the subject. See *Reg.* v. *Parry*, 14 Eng. Law & Eq. 549; *Watson* v. *Walker*, 23 N. H. 472, cited by defendant.

*Judgment affirmed.*

PETITION FOR A NEW TRIAL.

TYLER, J. The suit was brought for an alleged breach of promise of marriage; it stood for trial at the March Term, 1903, Washington County Court, and the defendant came from Italy to make defence, but the plaintiff not being ready for trial when the case was reached, it was displaced, and the pressure of other business prevented its being tried at that term. At the following September term it was continued upon proof of the defendant's sickness in Italy, besides it was not reached in its order. At the March Term, 1904, several cases before it having been disposed of, it was second for trial. The defendant's counsel applied to the court to have the trial postponed until a later day in the term so that the defendant could arrive from Italy, but the court denied the application and held that the trial must proceed. The case was tried in the defendant's absence and the plaintiff obtained a large ver-

dict.  The defendant arrived in court April 10, after verdict and judgment.

The plaintiff testified at the trial that a few months after the death of the defendant's wife, who was her sister, the defendant went to the village in Italy where she resided with her father, paid attentions to her for some time and then proposed a marriage with her; that she assented, and, upon the advice of a priest whom they consulted, a church ceremony was performed upon an agreement between themselves and their promise to the priest that they would be legally married upon their arrival in this country; that soon after their arrival in Montpelier, the plaintiff requested the defendant to have the marriage legally performed, but the defendant delayed the marriage on the pretence that he must receive a certain paper from Rome before they could be lawfully married, and that he put off the marriage for a year with this excuse, though she constantly urged its performance; that during this time she lived with the defendant as his wife, worked in his store, kept his house and cared for his children; that at the end of a year they returned to Italy and lived there in the same relations about ten months, she urging the marriage and he delaying it with various excuses; that she then left him and returned to St. Albans in this State with her sister and her sister's husband, who was the defendant's brother.  She denied making any settlement with the defendant and denied receiving any money from him or from his brother.  It appeared that soon after the plaintiff returned to this country the defendant married another woman.  Testimony was given in behalf of the plaintiff at the trial tending to show that the defendant was worth $30,000 when he made the promise of marriage.

The material facts set out in the petition and the other affidavits attached are, that about six months after the death

of the petitioner's wife in January, 1899, the petitionee, who resided with her father in Italy, wrote a letter to the petitioner complaining of her father's ill treatment of her and offering to come to Montpelier, where the petitioner resided, and take care of his house and children; that he sent her money with which to pay her fare; that a few weeks later she wrote him that her father had taken the money and she was unable to make the journey; that in March following he went to Italy to visit his parents; that while there he met the petitionee several times and that it was finally decided that she should return with him to Montpelier; that upon the advice of a priest a religious ceremony was performed prior to their departure but did not constitute a legal marriage, as both parties understood, and that the priest said they could be married at any time in America; that they arrived in Montpelier early in May of that year; that the petitionee soon developed a violent temper and treated the petitioner and his children rudely and expressed a wish to leave his house; that she continued this abusive conduct towards him and his children for a year, when, not being able to endure it longer, he sold a profitable business and returned with her and the children to Italy, where they lived together until March, 1901, when the petitionee returned to this State with the petitioner's brother, who, with his wife, was coming here; that before she left he made a settlement with her by which his brother, who owed him one thousand dollars, was to pay her six hundred dollars in settlement, that the brother subsequently paid him four hundred dollars and held the six hundred for the petitionee by her request, he agreeing to pay her interest thereon; that the petitionee never requested the petitioner to marry her, but refused to marry him and refused to live with him, and that he never lived with her as his wife. The petitioner also deposes that he was not worth more than five thousand dollars at the time the petitionee left him and that she knew that fact.

The petitioner's attorney makes affidavit of the following facts in support of the petition: that he had informed his client by letter how his case stood and that he must be in Montpelier the last of February or first of March; that he replied from Italy that he was not then able to make the journey but believed he would be in March; that the attorney wrote him again urging him to be there on a certain day; that on March 6 he received a letter from him saying that he would be there early in April and to hold the case for trial and expressed a wish to have it tried as soon as it could be got ready after his arrival; that the attorney informed the court of the situation and that the defendant would be here to try the case in April; that the plaintiff's attorneys were willing that it be set at a later day, provided it would not result in a continuance, and that they so stated to the court; that the defendant's attorney showed the court the defendant's letter received by him March 6.

It appears that the parties are at variance in respect to the promise of marriage, their relations while they lived together, the settlement and the petitioner's financial means. The petitioner was entitled to a reasonable opportunity to make a defence in the court below. He did not have his day in court and a large verdict was rendered against him. The question is whether he is entitled to have the verdict set aside and a new trial granted him.

The petition is not based upon the ground of newly discovered evidence, but upon the claim that the petitioner was, by accident, prevented from making a defence to the action.

Questions of continuance and assigning cases for trial, must, as a rule, rest in the discretion of the trial courts, and we do not revise the action of the court below based upon the evidence that was before it. At the time the trial began the court doubtless had reason to believe that the defendant's

alleged sickness was a pretence for a delay.   No evidence of his sickness was shown otherwise than by his letters to his counsel, but he now makes affidavit that he was prevented by sickness from making the journey until the last of March; that the death of his father, which occurred March 9, delayed him; that he should have come here the last of February, as requested by his counsel, had he not been prevented by sickness.   If the court had known the facts which now appear in the petition and affidavit—that the defendant intended to make defence and would be in court for that purpose before the term closed, we may assume that it would have deferred the trial, certainly with the knowledge that the defendant's delay was caused by his sickness and the death of his father.

The jury lawfully assessed the damages in view of what they understood to be the defendant's pecuniary ability.   It was for this purpose that the plaintiff introduced evidence in respect to the defendant's property.   If it is true and the jury had known the fact, as the petitioner deposes, that he was not worth more than five thousand dollars, it is reasonable to suppose that the verdict would have been for a smaller sum.

The question is whether the case presented comes within V. S. 1662, which reads:

"The Supreme Court may grant a new trial in a cause determined by such Court, or by a county court, on petition of either party, subsequent to the term of the court at which the original judgment was rendered."

The Legislature has placed no limitation upon the power of the court to grant new trials under this section of the statute, nor prescribed the grounds for new trials.   The Court has repeatedly construed the statute and fixed the boundaries of its power.   It is evident that both the Legislature and the Court have intended to give a "broad scope" to this power, as was said in *Nelson* v. *Marshall*, 77 Vt. 44.   In that case

it was held that a party was entitled to a new trial for the reason that by accident she had been prevented from filing her exceptions within the time required by law. The broad construction there given to this section, aided by the provision of section 1664, clearly entitle the petitioner to a new trial.

Webster defines accident as an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, and therefore not expected; chance, casualty, contingency. The word has often received judicial construction. In *Bostwick* v. *Stiles,* 35 Conn. 198, it is said that it includes not only inevitable casualties, such as are caused by the act of God, but also those that arise from unforeseen occurrences, misfortunes, losses, and acts or omissions of other persons without the fault, neglect or misconduct of the party. *Alexander* v. *Bailey,* 2 Lea 639; *State* v. *Lewis,* 107 N. C. 978. See 1 Am. & Eng. Ency. 272 and notes. In the same line of reasoning are *Webster* v. *Smith,* 72 Vt. 12, and *Bradley Fertilizer Co.* v. *Fuller,* 58 Vt. 315. Rowell, J., in *Kopper* v. *Dyer,* 59 Vt. 478, aptly quotes from 2 Pom. Eq. § 823, n. 1: "Accident is an unforeseen and unexpected event, occurring external to the party affected by it, and of which his own agency is not the proximate cause, whereby, contrary to his own intention and wish he loses some legal right or becomes subjected to some legal liability, and another person acquires a corresponding legal right, which it would be a violation of good conscience for the latter person, under the circumstances, to retain." In that opinion the writer proceeds to say: "And the chief point of the thing is, that because of the unforeseen and unexpected character of the occurrence by which the legal relation of the parties has been unintentionally changed, the party injuriously affected thereby is in good conscience entitled to relief that will restore those relations to their original character, and place him in his former position."

We think that the petitioner's sickness and the death of his father may properly be considered accidental causes of his failure to appear in court upon the trial of his case, and that he is entitled to a new trial.

*Judgment reversed, verdict set aside and a new trial granted.*