MANUEL GOMEZ v. ALEXANDER LAWSON.

February Term, 1933.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed May 2, 1933.

*C. O. Granai* for the defendant.

*Marcell Conway* for the plaintiff.

MOULTON, J. This action has been brought to recover damages for the breach of a contract to do certain sand blasting on a granite monument. The trial was by the court, which, after making a finding of the facts, rendered judgment for the plaintiff. The case is before us on exceptions by the defendant.

The following facts were found: The plaintiff, who was a manufacturer of granite monuments in Barre, Vermont, sold a monument to one Banks of Wilkesbarre, Pennsylvania, and entered into a contract with the defendant to place sand blast lines upon the base, the two pilasters and the cap. Under this

contract, these lines were to run one inch from the edges of the monument, were to be $\frac{5}{16}$ of an inch in width, and were to be so placed that when the various pieces were set in place, there would be no perceptible break in the alignment. The work was to be done in a good and workmanlike manner, which required that there should be no more than $\frac{1}{32}$ of an inch variation in the width of the lines, and that the distance of the lines from the edge should not vary more than $\frac{1}{32}$ of an inch. After the defendant had completed the sand blasting, the monument was shipped to Wilkesbarre and set up. The plaintiff received a complaint, and went to Wilkesbarre, where, on inspection, he found that the lines varied in width from $\frac{1}{4}$ to $\frac{3}{8}$ of an inch, that the distance from the lines to the edge was not uniform, and varied more than $\frac{1}{32}$ of an inch, and that, where the pieces joined, the lines did not meet, and some of them were out of alignment nearly $\frac{1}{4}$ of an inch. This gave an appearance displeasing to the eye, and because of the defects above enumerated the sand blasting was not done in a good and workmanlike manner, in accordance with the contract. The plaintiff was obliged to take back the pilasters and the cap, and to replace them with others. He was able to sell the pieces returned, after doing some further work on them. His loss, after allowing credit for this sale, was $771.50.

The first exception is one taken to the finding that the lines varied in width, and in distance from the edge, and did not meet where the various pieces of the monument joined, to the extent above mentioned. The only claim briefed is that the evidence showed only two places where the lines did not meet and that in each of these instances the plaintiff himself, during his visit to Wilkesbarre attempted to remedy the defect, by the use of a pneumatic tool, and that the trouble was due to his own act. But the evidence tended to show that the lines did not coincide and were the cause of dissatisfaction before the plaintiff made his unsuccessful attempt to correct the difficulty, and the defendant was not thereby relieved from liability for the failure properly to perform the work. The exception is not sustained.

The defendant excepted to the finding that the monument had, by reason of the variation of the lines, "an appearance displeasing to the eye." The ground of this exception is lack of supporting evidence. True, no witness testified to this,

in so many words. But there was testimony, given not only by the plaintiff, but by three experienced granite cutters, that the lines varied in width and direction to such an extent that it was "very noticeable"; that the discrepancies could be seen without measuring the monument; that the general appearance showed that the lines were "rather poorly executed," and had the effect of "destroying the beauty of the work." There were also photographs showing portions of the monument. On this evidence the finding above mentioned was not an unreasonable inference.

The next exception is to the finding that, "because of the poor sand blast job, it became necessary for the plaintiff to take back the two pilasters and cap." In briefing this question, the defendant urges that the plaintiff saw the monument when it came from the defendant's shed, and, by his action in crating and shipping it to Wilkesbarre, he accepted and approved the work done upon it. This argument, however, does not touch the question, which is whether the reason for the rejection of the monument by the purchaser was the defective sand blasting. The testimony of the plaintiff supported the finding, and was to the effect that, upon receiving notice that the purchaser was dissatisfied, he went to Wilkesbarre, inspected the monument as fully erected, found that the lines did not meet and varied in alignment, which defects were the cause of the complaint, and, since the purchaser refused to accept the work, shipped the pilasters and cap back to Barre, and replaced these parts with others specially manufactured for the purpose.

The claim of acceptance and waiver of the defects is considered later on in this opinion.

An exception was taken to the finding that plaintiff's loss, by reason of the defective sand blasting, was $771.50. The reason given for this exception was that the defendant was not responsible for the defect, since the plaintiff had himself tried to make the lines meet by the use of a pneumatic tool. We have already pointed out that the latter's attempt to make the matter better does not excuse the defendant from liability for the previous improper execution of the work. The evidence tended to show that the trouble was with the sand blasting. There is no merit in this exception.

■ The defendant also excepted to the failure of the court to disregard the entire testimony given by the plaintiff, because of certain inconsistencies in his direct and cross-examination. But, without discussing the matter further, it is enough to say that the credibility of the witness and the weight to be given his testimony were matters for the triers of the fact (in this case the three members of the court) to decide. It was for them to say which of the contradictory statements they would accept. *McDonald* v. *McNeil,* 92 Vt. 356, 361, 104 Atl. 337; *Robey* v. *B. & M. R. R.,* 91 Vt. 386, 388, 100 Atl. 925; *Riford* v. *Rochester,* 46 Vt. 738, 740. It is, moreover, only fair to the plaintiff to say that an examination of the transcript discloses no such glaring contradictions in his testimony as the defendant claims, and, in fact, such inconsistencies as there are appear to have been reasonably explained upon the redirect examination. There is no error here.

There is a similar exception to the failure of the court to disregard the testimony of William Parry, a granite cutter, who testified to the appearance of the monument and the imperfect sand blasting. The argument is that the monument examined by the witness was not the one in issue, and is based upon what is claimed to be the testimony of the witness as to the date of the examination. He said that he could not give the date but thought it was in August, 1931, which, if true, would be after the monument had been taken back and the name ''Banks'' removed by the plaintiff, and the work recut and sold at a reduced price and shipped to the purchaser. But other testimony was to the effect that the inspection was in June, and that the name ''Banks'' was then on the monument. This evidence of identification was sufficient to justify the court in giving consideration to Parry's testimony.

■ ■ Still another exception is to the failure to find that the defendant did the work in a good and workmanlike manner, according to the specifications furnished by the plaintiff. There is no merit in this exception, because, as we have seen, the evidence amply supported the plaintiff's claim. It is also argued that the court should have found that the plaintiff, by shipping the monument to Wilkesbarre, after looking it over, approved the work done by the defendant. We treat this question as having been raised below, although from the record there is some doubt that this is so. The plaintiff testified that, before shipping,

he observed that the sand blast lines were wider than the specifications, but that the monument was not set up, but came to him from defendant's shed in three pieces, and that he did not discover that the lines did not meet at the juncture of the several parts of it, and that they varied in alignment, until he examined the work at the cemetery in Wilkesbarre, and on his return he gave notice to the defendant. The defendant testified that the plaintiff made complaint to him, before he went to Wilkesbarre. We do not consider that this evidence was such as to require the court to find an acceptance and waiver of defects. It was natural that the plaintiff would not accept the work even though he knew of the deviation from the specifications until the purchaser should express his satisfaction. See *Bianchi Granite Co.* v. *Terre Haute Monument Co.*, 91 Vt. 177, 181, 182, 99 Atl. 875. No unreasonable delay in notification appears. The trouble lay not only in the width of the lines but in their alignment, and this was not known until later. The failure immediately to protest concerning the one defect discovered did not preclude the plaintiff from his claim for damages for the breach of the contract. See *Andrews* v. *Eastman*, 41 Vt. 134, 138, 98 A. D. 570.

■ ■ The last exception was taken to the refusal of the court to continue the case to enable the defendant to secure the attendance of a witness from Wilkesbarre. The trial commenced on December 2, 1931, and was adjourned until December 7, at the defendant's request. On that day defendant's counsel orally moved for a continuance, stating that the illness of an aunt of the witness prevented the latter's attendance. No affidavits were filed, and the substance of the expected testimony was not given as required by the county court rule 19, and this alone would justify the ruling. The defendant's brief contains the statements that the witness "could have been heard as very material evidence," and "could have testified to the actual condition of the monument." Certainly, these assertions do not take the place of the affidavits, which must be filed as the rule provides, and in themselves are not especially illuminating. The granting of a continuance lies within the discretion of the trial court. *Land Finance Corp.* v. *St. Johnsbury Wiring Co.*, 100 Vt. 328, 333, 137 Atl. 324; *Massucco* v. *Tomassi*, 78 Vt. 188, 195, 62 Atl. 57. The court stated in effect that the defendant, although he knew of the approaching trial, had failed to use proper

diligence in procuring the attendance of the witness. Aside from all question of noncompliance with the rule, no abuse of discretion appears, and the exception is not sustained.

*Judgment affirmed.*