### In re Proceedings Concerning a Neglected Child

[296 A.2d 250]

No. 158-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed October 18, 1972

526

*Kimberly B. Cheney*, State's Attorney, for the State.

*Alan W. Cheever, Esq.*, Barre, for the child, Plaintiff.

*John J. Easton, Jr., Esq.*, Montpelier, for the mother, Defendant.

*Thomas F. Koch, Esq.*, Barre, for the father, Defendant.

**Daley, J.** This is a proceeding brought under the Juvenile Procedure Act, 33 V.S.A. §§ 631–666. The proceeding was commenced when, on August 7, 1970, the state's attorney for Washington County brought a petition to the District Court of Vermont, Unit No. 5, Washington Circuit, sitting as a Juvenile Court. In the petition, the state's attorney alleged that the child in question, then approximately two months of age, was a neglected child because "He is without proper parental care and control and subsistence, medical and other care and control necessary of his well being."

On the same day as the filing of the petition, the Chief of the City of Montpelier's Police Department took the child into custody as he had "reasonable grounds" to believe the child was in immediate danger from the child's surroundings, and that the child's removal was necessary for the protection of the child. 33 V.S.A. § 639(3). The child was delivered to the court, and later that day, a temporary detention hearing was held. 33 V.S.A. § 640(2), 642. At this hearing, at which the mother was present, a social worker with the Child Welfare Section of the Vermont Department of Social Welfare, testified as to the condition of the child when she observed him in the mother's apartment on two occasions. At the close of the hearing, the court found "The child may be harmed by continued residence in the child's present environment." Based upon this finding, the court issued a temporary detention order transferring legal custody of the child to the Commissioner of Social Welfare until a hearing on the neglect petition brought by the state's attorney could be held. In the detention order, the court also ordered the child to be detained at "a place to be determined by the Commissioner of Social Welfare."

During the next few days the court appointed counsel for the mother, father, and child. A guardian *ad litem* was also appointed for the child. 33 V.S.A. § 653.

Commencing on August 19, 1970, three hearings were held on the neglect petition which had previously been filed by the state's attorney. At these hearings testimony was taken from a physician who had previously treated the child, a Montpelier Home Health Agency nurse, a Family Services social worker, a psychiatric social worker, and a neighbor. At the

third hearing, prior to the state's resting its case, held on October 9, 1970, counsel for the parents stipulated that the child may be placed in a foster home by order of the court on a temporary basis solely because the mother was unable to take care of the child due to the fact her husband was presently incarcerated in state prison. On the facts stipulated, the court made a finding the child was without parental care at that time; and therefore was a neglected child. At that time the judge made it clear to all "that if circumstances change with the mother or father whereby they are in a position to assume the role of mother and father of this child and provide the care and parental responsibility necessary, you (the attorneys) can petition the court at any time for hearing to reconsider the Order made today."

Counsel for the father, mother, and infant waived the disposition hearing, and custody to the child was transferred to the Commissioner of Social Welfare with residual parental rights and guardianship remaining with the mother. 33 V.S.A. § 654.

On July 23, 1971, the state's attorney petitioned the court for commitment of the child to the Commissioner of Social Welfare without limitation with respect to adoption. During the hearing held on this petition, testimony as to the father's condition was taken from a psychiatrist, who had known the father for two years, and studied his case. The psychiatrist classified the father's mental state as being personality pattern disturbance, anti-social personality. He further stated the father's anti-social personality would never terminate and that it was his opinion the father would not be a fit custodian to have care of the child.

Testimony as to the mother's condition was taken from the chief medical records' librarian at Central Vermont Hospital, the child's maternal grandmother, a social worker, and two psychiatrists. This testimony amply indicated the mother was not fit to raise the child.

At the close of this hearing the court, on September 22, 1971, ordered transferal of legal custody of the child to the Commissioner of Social Welfare without limitation as to adoption, guardianship transferred to the Commissioner of Social Welfare, and residual parental rights transferred to the

Commissioner of Social Welfare. It is from this order the parents have appealed to this Court.

The appellants have raised and briefed five assignments of error; namely, (1) that 33 V.S.A. § 632 (a) (12) is so broadly termed that it deprived the appellants of due process because it allowed the state to take the child without a showing of a compelling state interest; (2) that the failure of the police chief to write down the time the child was taken and testify at the hearing, and the court to name the place where the child was detained constituted a deprivation of due process; (3) that the mother had a right to counsel at the initial detention hearing held on August 7, 1970; (4) that there had been no changed circumstances since the finding of neglect on October 9, 1970; and (5) that it was erroneous for the court to entertain the state's petition for commitment without limitation with respect to adoption because of the condition under which the stipulation was offered at the October 9, 1970, hearing, and to do so constituted an abuse of the court's discretion.

The first issue raised by the appellants assumes the neglect statute, 33 V.S.A. § 632 (a) (12), which states as follows:

" 'Neglected child' means a child who:

(A) has been abandoned by his parents, guardian or other custodians, or

(B) is without proper parental care or control, or subsistence, education, medical or other care or control necessary for his well-being.",

is so broadly termed that the state need not show a compelling state interest when it brings a neglect petition. In making this assumption, the appellants are challenging the statute as being unconstitutional on its face.

That the state must first show a compelling state interest before it encroaches upon the private realm of family life is not questioned. See *Meyer* v. *Nebraska*, 262 U.S. 390 (1923); *Pierce* v. *Society of Sisters*, 268 U.S. 510 (1925). The interest of the state in child neglect is found in the purposes sought to be effectuated by the entire Juvenile Procedure Act. Those purposes are found at 33 V.S.A. § 631 (a) wherein it is stated in part:

"(1) to provide for the care, protection and wholesome moral, mental and physical development of children coming within the provisions of this chapter; . . .

(3) to achieve the foregoing purposes, whenever possible, in a family environment, separating the child from his parents only when necessary for his welfare or in the interests of public safety; and

(4) to provide judicial procedure through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced."

See also *In re Rathburn,* 128 Vt. 429, 434, 266 A.2d 423 (1970).

The ability of the state to separate neglectful parents from their children has been recognized as a legitimate state interest, and it also is not questioned. *Stanley* v. *Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 559, 92 S.Ct. 1208, 1213 (1972). When the state is regulating in this area, it acts as *parens patriae* to the child. The proceedings conducted thereto are entirely concerned with the welfare of the child. *In re Rathburn, supra,* 128 Vt. at 434; *Brighton* v. *Charlestown,* 114 Vt. 316, 321, 44 A.2d 628 (1945).

The Due Process Clause of the Fourteenth Amendment acts as a safeguard to insure the rights of the parents are not indiscriminately encroached upon. It compels the state to draw its statutes narrowly enough to not sweep beyond that area which the state seeks to regulate. To withstand the charge of being an unconstitutional delegation of legislative power, the statute, in this instance, 33 V.S.A. § 632(a)(12), must establish reasonable standards to govern the achievement of its purposes and the execution of the powers which it confers. *Vermont Home Mortgage Credit Agency* v. *Montpelier National Bank,* 128 Vt. 272, 278, 262 A.2d 445 (1970).

In the instance of neglect the many diverse circumstances which give rise to a finding of neglect must be considered when the standards embodied in 33 V.S.A. § 632(a)(12), are viewed in light of the due process clause. Once this is done,

it becomes apparent the standards embodied within 33 V.S.A. § 632(a)(12), are detailed enough to govern the achievement of the purposes the act seeks to fulfill; thereby avoiding an unconstitutional sweep beyond that area which the state has sought to regulate. We find no basis to support the appellants' contention that 33 V.S.A. § 632(a)(12) is so broadly termed that it is unconstitutional on its face.

Appellants' second claim of error relates to several alleged procedural defects in the manner in which the child was taken into custody. The first error was allegedly committed by the police chief when he failed to note on the statement of custody the time the child was taken into custody. Instead the police chief merely indicated the date, August 7, 1970, on which the child was taken into custody. The statute, 33 V.S.A. § 640(2), does not require the time of taking to be noted, rather it requires the person taking the child to immediately deliver the child to the court. We must presume this was complied with, as the temporary detention hearing was held on the same date the chief took the child into custody. To hold otherwise would be to negate the presumption that a public officer is presumed to perform his duties satisfactorily and in accordance with his authority. *Royalton Taxpayers Protective Association, Inc.* v. *Wassmansdorf*, 128 Vt. 153, 157–58, 260 A.2d 203 (1969).

■ The appellants allege the failure of any law enforcement officer to testify at the temporary detention hearing about the grounds for which the child was taken into custody constitutes a deprivation of due process. Although no law enforcement officer testified at the temporary detention hearing, a social worker, with the Child Welfare Division of the Department of Social Welfare, who had observed the child on two occasions, did testify. From her testimony there was ample evidence to believe the child was in immediate danger from his surroundings, and that his removal was necessary for his protection. See 33 V.S.A. § 639(3). Thus, the social worker's testimony was the basis for the chief's actions. Upon these facts, we find no deprivation of due process occurred.

■ At the close of the temporary detention hearing, the court signed a temporary detention order detaining the

child at "a place to be determined by the Commissioner of Social Welfare." The appellants contend this is a deprivation of due process, as 33 V.S.A. § 642(a) requires the court to name the place where the child was detained. At first blush it would appear as though the mandate of the statute was not met. However, the record reveals the child, then only two months old, was taken into custody because he was suffering from a severe bronchial condition for which the mother had not made an effort to treat after being so advised by the Public Health Nurse. For this reason the social worker told the court if custody was transferred to the Commissioner of Social Welfare, she would immediately take the child to a physician to determine if he should be hospitalized. Given the contingent location of the child pending medical consultation and the presence of the mother at the hearing, we find no deprivation of due process.

The third issue raised by the appellants focuses upon the temporary detention hearing held on August 7, 1970. The appellants contend the mother and the child were entitled to be represented by counsel at this hearing as a matter of due process. The temporary detention hearing is an emergency measure designed to assure prompt judicial supervision over a child once he is taken into custody by a law enforcement officer who has reason to believe that the child is in immediate danger from his surroundings, and his removal is necessary for his protection. The purpose of this hearing is to provide for the shelter of the child until a full hearing on a neglect petition can be had. 33 V.S.A. §§ 632(a)(17), 642(a). In this situation, the court is entirely concerned with the welfare of the child. *In re Rathburn, supra,* 128 Vt. at 434. For this reason a temporary detention hearing in a child neglect case has a different purpose than the petition filed by a state's attorney alleging that the child is neglected. 33 V.S.A. § 645. In the latter proceeding the court appointed counsel for all parties and a guardian *ad litem* for the child. 33 V.S.A. § 653.

However, a child neglect proceeding is far different from a juvenile delinquency proceeding where as a matter of due process, counsel is required. *In re Gault,* 387 U.S. 1 (1967). In a delinquency proceeding the result may often be incarceration in a state institution, and as such the pro-

ceeding is of a criminal nature. *In re Gault, supra,* 387 U.S. at 41. See generally *Argersinger* v. *Hamlin,* 407 U.S. 25, 32 L.Ed. 2d 530 (1972). On the other hand, a neglect proceeding is protective and not criminal in nature. The purpose is not to condemn the child or its parents for the difficulties of the situation which confront the court. *In re Rathburn, supra,* 128 Vt. at 434. For these reasons, we hold the due process clause did not require the advice of counsel at the temporary detention hearing held on August 7, 1970.

Appellants claim it was erroneous for the court to hear and pass upon the petition for commitment without limitation with respect to adoption because there had been no changed circumstances during the time which intervened between the finding of neglect and the disposition order, and the filing of the petition.

In juvenile matters the court's jurisdictional boundaries are set forth in 33 V.S.A. § 634, as follows:

> "Jurisdiction of a child obtained by the juvenile court in a proceeding under this chapter shall be retained by it, for the purposes of implementing the orders made and filed in that proceeding, until the child attains his majority, unless terminated by order of the court prior thereto."

This broad conferral of jurisdiction is retained by the court so it may implement orders as the interests and welfare of the child so dictate. Part of this jurisdictional grant is found at 33 V.S.A. § 659(a) which states in part:

> "An order of the court may be set aside by a subsequent order of that court or, upon appeal from a denial thereof by that court, by a court upon appeal therefrom, when it appears that the initial order was obtained by fraud or mistake sufficient therefor in a civil action, or that the court lacked jurisdiction over a necessary party or of the subject matter, or that newly discovered evidence so requires. An order of the court may also be amended, modified, set aside or terminated by that court at any time upon petition therefor by a party or on its own motion on the ground that changed circumstances so require in the best interests of the child."

Because the modification of the original disposition order was made upon matters requiring a factual showing, and no detailed findings were made at the conclusion of the hearing, we have carefully reviewed the transcript and record to determine if such a factual showing was made. *In re Proceedings Concerning a Neglected Child,* 129 Vt. 234, 237, 276 A.2d 14 (1971).

Our review of the record demonstrates several changes took place in the period following the original disposition order. First, and most basic, the child had become a year older without a whisper of promise of proper care from either parent. The significance of this factor rests in the testimony of one of the psychiatrists which established the first five years of a child's life are his most formative years. Second, in spite of the fact the mother had ample opportunity to demonstrate her rehabilitation, the facts show an utter lack of planning, preparation, or even an abiding interest in the child on her part during that period. The mother made no effort to establish a home as she drifted from her mother's home to that of an uncle. The mother visited the child on only three occasions during the intervening period. The mother was unable to hold down a job and support herself. Throughout the year the mother continued her rather nomadic way of life by associating with other men and contracting a venereal disease. Although the mother was offered assistance from various social agencies, she refused to cooperate with them. During the year, the mother made no plans with her husband to establish a home and take care of the child. Finally, a psychiatrist testified, "I feel that her chance [*sic*] to raise that baby properly are very poor." Third, the father remained incarcerated during that period. Moreover, the psychiatric testimony revealed that even if the father were released, he would be unable to assume the role of the child's father in the near future.

Our review of the record satisfies us that the circumstances so demonstrated warranted the juvenile court, acting in the best interests of the child, to grant the state's petition for commitment without limitation with respect to adoption. Moreover, the conditional nature of the first disposition made it clear that there was an obligation on the par-

ents to correct their living circumstances for the better if custody was ever to be returned to them. The direction of change was, unfortunately, for the worse.

The appellants, in their last assignment of error, contend the stipulation which they entered into on October 9, 1970, barred the court from granting the state's petition for commitment without limitation with respect to adoption.

Through the stipulation, the appellants forfeited their right to compel the state to prove their child was neglected. The forfeiture of this right was conditioned upon the court's transferring legal custody to the Commissioner of Social Welfare while retaining residual parental rights in the mother. This condition was honored by the court, and it made its findings of neglect and order of disposition accordingly. However, the finding and order entered upon the basis of the stipulation must then, to say the least, be as conclusive upon them as if judgment was rendered in the ordinary course of the proceedings. *In re Cartmell Estate,* 120 Vt. 234, 240, 138 A.2d 592 (1958).

If we were to accept the appellants' contention that the stipulation acted to lock the court into its order of October 7, 1970, we would be slicing into the conclusive effect of the finding of neglect. In so doing, we would be limiting the power of the court to amend, modify, set aside, or terminate that order, as the statute, 33 V.S.A. § 659, requires the court to do when changed circumstances so require. This we cannot accept, as it would be giving a stipulation a greater stature than the judgment itself. Moreover, it cannot be doubted the court has the power to amend an order which was originally made upon the basis of a stipulation when sufficient support has been demonstrated for the change. *Braine* v. *Braine,* 127 Vt. 211, 243 A.2d 797 (1968). As earlier stated, this was amply shown by the state at the hearings held on the state's petition for commitment without limitation with respect to adoption.

Relying upon the basis for the stipulation, the father's incarceration, the appellants contend it was an abuse of judicial discretion for the court to entertain the state's petition for commitment without limitation with respect to adop-

tion at a time when the father "might be released within the next month." However, the record also discloses the court, in entertaining this petition, had before it testimony from two psychiatrists that the father would not be able to assume the role of the child's father if he were released in the near future. On the record before us we cannot say the trial court exercised its discretion on grounds or for reasons clearly untenable or clearly unreasonable. *Savard* v. *Cody Chevrolet*, 126 Vt. 405, 413, 234 A.2d 656 (1967).

*No error having been shown, decision of the juvenile court is affirmed.*