373 A.2d 851 (1977)
In re N. H. (juvenile).
No. 97-76.
Supreme Court of Vermont.
April 5, 1977.
*853 Michael J. Sheehan, Windsor County State's Atty., and William J. Donahue, Deputy State's Atty., White River Junction, for plaintiff.
Divoll & Doores, Bellows Falls, for the father.
James L. Morse, Defender Gen., and Robert M. Paolini, Deputy Defender Gen., Montpelier, for the juvenile.
Before BARNEY, C. J., LARROW, BILLINGS and HILL, JJ., and SHANGRAW, C. J. (Ret.), Specially Assigned.
HILL, Justice.
The present appeal has been brought by the father of the infant N.H. from a disposition order entered by the District Court of Vermont, Windsor Circuit. In its order, the court, sitting as a juvenile court under the Vermont Juvenile Procedure Act, directed that custody and guardianship of N.H. be transferred to the Department of Social and Rehabilitation Services with residual parental rights to remain in the child's natural parents.
The child N.H. was born in March of 1974, the offspring of what can only be termed an unstable and turbulent marriage. The married life of N.H.'s parents has been marred by a series of separations, reconciliations, and re-separations. At the present, the parents are living apart, as they have been since November of 1974, and divorce proceedings have been initiated by the father.
The facts giving rise to the juvenile court's jurisdiction over this matter are tragic indeed. On the evening of November 5, 1975, N.H. was brought to the hospital in Springfield, Vermont, by her mother. At the time of her admission, N.H. was vomiting, had a red throat, and appeared dehydrated. Subsequent examination by Dr. Frederic Guilmette, a practicing pediatrician, revealed extensive bruises on the child's leg, arm, abdomen, and back. Suspecting that N.H. was the victim of physical abuse, Dr. Guilmette directed that the area office of the Department of Social and Rehabilitation Services be notified. When questioned as to the cause of N.H.'s injuries, the mother was vague and nonresponsive. Though she refused to directly state it, the mother strongly implied that N.H. had suffered the alleged abuse at the hands of her boyfriend, with whom she was living and in whose charge the child had been left.
On November 7, 1975, a petition was filed in the District Court of Vermont by the Windsor County Deputy State's attorney, asking that proceedings under 33 V.S.A. Chapter 12 be initiated for the purpose of determining whether N.H. was a child in need of care or supervision. On that date, an emergency detention hearing was held in White River Junction at the district court. On the basis of the abuse report filed by Dr. Guilmette, the custody of N.H. was placed in the Department of Social and Rehabilitation Services pending a hearing on the merits.
Here we think it appropriate to note that this was not the first occasion on which such proceedings had been commenced in regard to N.H. In April of 1975, in Windham County, under circumstances distressingly similar to those here, the child N.H. was admitted to Rockingham Memorial Hospital, suffering from an assortment of injuries, including a fractured skull. As was the case here, because of a suspicion of abuse, a petition was filed by the State's Attorney pursuant to 33 V.S.A. § 645. Additionally, it was during this period of time that the father initiated divorce proceedings in Windham Superior Court, and, in connection therewith, sought custody of N.H. The superior court, however, ruled that in light of the juvenile proceedings then pending in the district court, it had no jurisdiction to render any order as to the custody of the subject child. Subsequently, *854 the petition in juvenile court was withdrawn, and in some inexplicable manner, the child was returned to her mother, into the same unfortunate environment.
In accordance with the provisions of the Vermont Juvenile Procedure Act, 33 V.S.A. Chapter 12, hearings were held for the purpose of determining whether N.H. was, as alleged in the State's petition, a child in need of care or supervision. At these hearings, the court received testimony from the physicians who had treated N.H. on the two occasions when she had been hospitalized; from both parents, who were represented by counsel; and from the paternal grandparents of N.H. On the basis of this testimony, and other pertinent evidence, the court found that the father had not participated in the abuse and had been separated from the mother when the abuse occurred. The court went on to find that N.H. was an abused child without parental care and control as contemplated by the language employed in 33 V.S.A. § 632(a)(12).
In compliance with the bifurcated procedure established by the Act, a disposition hearing was scheduled. At this proceeding, the father requested that the court return N.H. to him. In connection with his request, the father testified that he was residing with his parents and that both he and they were ready, willing, and able to supply N.H. with a loving, stable and secure family environment. The grandparents also testified that they and their son could provide a home well suited to meet the physical and emotional needs of the child.
On the other hand, the disposition reports submitted by the Department of Social and Rehabilitation Services pursuant to 33 V.S.A. § 655 recommended that custody and guardianship of N.H. be given to that Department. In support of its recommendation, the Department noted the history of alcohol and psychological problems exhibited by the father plus the fact that he was unemployed and suffering from Hodgkins Disease. Furthermore, the Department stressed that both grandparents were in their sixties, that the grandfather suffered from angina, and that as a result they might not be able to adequately minister to the considerable needs of a young child.
The child's mother freely admitted her own demonstrated inability to care for her child, and acquiesced in the Department's recommendation.
On the basis of the foregoing, the court concluded that the grandparents did not constitute the sort of family environment contemplated by the Act, and that it was necessary for the welfare of the child that she be separated from both her parents so as to ensure the "physical and psychological support necessary for her normal maturation". Therefore, the court ordered that custody be transferred to the Department. The father now appeals this determination. We also note that the Office of the Defender General, appointed counsel for the child, has concurred in the position taken by the father in his appeal to this Court.
The parties have framed two questions for our resolution: (1) Whether under the facts of the present case it was proper for the juvenile court to make a finding that N.H. was a child in need of care and supervision within the meaning of 33 V.S.A. § 632(a)(12)? (2) If the answer to the first inquiry is in the affirmative, whether the court's order of disposition was erroneous. For reasons to be developed in the body of this opinion, we answer both of the above questions in the affirmative and direct that the order of disposition be vacated.

I.
The appellant father's argument in regard to the first issue posed by his appeal is founded on his contention that throughout the course of these proceedings he has steadfastly maintained that he is the child's natural father, that none of the cause of the abuse could be attributed to him, and that he is ready, willing and able to take custody of the child. By virtue of these facts, the appellant urges us to find that the juvenile court's conclusion that N.H. is a child in need of care and supervision is *855 not supported by the evidence and is in error.
In support of the above position, the appellant offers for our consideration his construction of the following language employed in 33 V.S.A. § 632(a)(12):
(12) "Child in need of care or supervision" means a child who:
(A) Has been abandoned or abused by his parents, guardian or other custodian; or
(B) Is without proper parental care or subsistence, education, medical, or other care necessary for his well-being; or
(C) Is without or beyond the control of his parents, guardian or other custodian.
Emphasizing the use of the plural "parents" in this section, the appellant asserts that a child can be found in need of care or supervision only when it is affirmatively shown that both parents were involved in the circumstances giving rise to the juvenile court's jurisdiction. In this case, the appellant states that such a conclusion cannot logically be reached since he and his wife were living apart and the evidence clearly demonstrates that each instance of abuse occurred when N.H. was in the exclusive custody of her mother.
It appears that the argument made by the appellant involves a question of statutory interpretation. In this connection, we note and re-state our prior position that a statute providing the basis for determining who are neglected children should be liberally construed so as to aid the purpose of its enactment. In re Rathburn, 128 Vt. 429, 434, 266 A.2d 423 (1970). The State, pursuant to the long-recognized doctrine of parens patriae, is empowered to enact laws for the protection, care, custody and support of children within its jurisdictional limits. These laws, as created in Vermont, are designed to establish protective procedures, primarily concerned with the welfare of the child. In re Delinquency Proceedings, 129 Vt. 185, 190, 274 A.2d 506 (1970); In re Proceedings Concerning a Neglected Child, 130 Vt. 525, 531, 296 A.2d 250 (1972). The power thus allocated to the State is "awesome" indeed, and is necessarily subject to certain restraints imposed by the Legislature. Accordingly, any time the State seeks to interfere with the rights of parents on the generalized assumption that the children are in need of care and supervision, it must first produce sufficient evidence to demonstrate that the statutory directives allowing such intervention are fully satisfied. In re J. M., 131 Vt. 604, 607, 313 A.2d 30 (1973). See also In the Matter of Zerick, 129 N.E.2d 661, 664-65, 74 Ohio L.Abs. 525 (Juv.Ct.1955).
Though appellant agrees that N.H. is in fact an abused child, he asserts that the State has failed to meet its burden under the Act inasmuch as it has not shown in any way that he was involved in the abuse, or has otherwise demonstrated a culpable disinterest in the child's welfare. We must, however, reject this position. If we were to do otherwise, it appears that the express purpose of providing for the child's welfare would be frustrated. 33 V.S.A. § 654(a) provides: "If the court finds that the allegations made in the petition have not been established, it shall dismiss the petition and order the child discharged. . . ." The question thus arises as to what becomes of the child. Nowhere in the statutory scheme is the juvenile court empowered to direct any disposition unless it is first able to conclude that the child is a "child in need of care or supervision". In lieu of such a finding and the concomitant lack of jurisdiction, there is a strong possibility that the child will be returned to the same situation from which it has been taken. There seems to be no assurance that the parent who has not participated in the abuse, and has avowed his desire to assume custody, will in fact receive custody. We feel that the statutory use of the word "parents" in the pertinent sections does not require such an outcome. It is an accepted rule of statutory construction that words used in the singular may be read as to include the plural, and the plural the singular, except where a contrary intention plainly appears, E. R. Wiggins Builders Supplies, Inc. v. Smith, 121 Vt. 143, 146, 149 *856 A.2d 360 (1959); 1 V.S.A. § 175. Under the facts presented in this case, then, we conclude that the court was justified in assuming jurisdiction over the matter, and in rendering its conclusion that N.H. was an abused child without proper parental care and control.

II.
Having determined that the first question raised for our review is to be answered affirmatively, we next turn to a consideration of the arguments raised in reference to the conclusions arrived at in the disposition hearing.
The policy and purposes of the Vermont Juvenile Procedure Act, insofar as pertinent to the instant dispute, are set forth in 33 V.S.A. § 631(a) as follows:
(a) The purposes of this chapter are:
(1) to provide for the care, protection and wholesome moral, mental and physical development of children coming within the provisions of this chapter;
. . . . .
(3) to achieve the foregoing purposes, whenever possible, in a family environment, separating the child from his parents only when necessary for his welfare or in the interests of public safety.
The ability, indeed the duty, of the State to remove children from unfit parents pursuant to its parens patriae power is well accepted. In re Proceedings Concerning a Neglected Child, supra, 130 Vt. at 531, 296 A.2d 250. However by the same token, the freedom of children and parents to relate to one another in the context of the family, free of governmental interference, is a basic liberty long established in our constitutional law. See Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In order to ensure that this fundamental liberty will not be unduly tampered with, the Legislature, in § 631(a)(3), has expressly provided that a child be separated from its parents "only when necessary for his welfare or in the interests of public safety." In re J. M., supra, 131 Vt. at 609, 313 A.2d at 33. The statute certainly does not allow for intervention simply because a child might be better off somewhere else. In determining that a child is endangered and that State intervention is necessary, the court is to act with great care in deciding what type of intervention is appropriate. Wald, State Intervention on Behalf of "Neglected" Children, 28 Stan.L.Rev. 625 (1976). The concern and deference to be accorded the parent-child relationship has recently been articulated by Justice Larrow in his concurring opinion in the case of In re J. & J. W., 134 Vt. ___, ___, 365 A.2d 521, 525 (1976):
I do not view the statute as trying to create the best possible world. I do not think it intends to set up a mechanism for transferring parental rights from those in temporary difficulty to those more affluent and adjudged by the social worker as more capable of educating and rearing the progeny, if not of procreating them. The result below does not accord with our social policy of bolstering the family unit, preserving it, where necessary, by financial and other support.
Turning to the facts of this case, we do not doubt the existence of some questions concerning the ability of the appellant to assume an active, responsible parental role. However, it is beyond dispute that he, with the support of his parents, stands willing and able to provide N.H. with a family environment. The relevant question regarding disposition is how to provide for the child's welfare. In general, it seems to us that in most cases the child's interests are best met by helping the parents in one fashion or another to achieve these interests without undue State intervention. Therefore, the juvenile court is not free to weigh and compare the merits of various possible solutions free of any regard for compelling parental rights. See In re B. G., 11 Cal.3d 679, 114 Cal.Rptr. 444, 523 P.2d 244, 255 (1974). We note that the Juvenile Procedure *857 Act, in § 656(a)(1), provides the court with substantial leeway in framing a disposition order that will serve the purposes of the statute. In the absence of any convincing proof that the appellant is an unfit parent, demonstrably incapable of providing an appropriate home for his child, the disposition order of the juvenile court is vacated.
The disposition order of the District Court of Vermont, Unit No. 6, Windsor Circuit, is hereby vacated. The cause is ordered remanded for the sole purpose of the court giving custody of N.H. to the father under such terms and conditions as the court may determine.