### In re R. S., L. S. and B. S., Juveniles

[469 A.2d 751]

No. 82-256

Present: **Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.**

Opinion Filed November 1, 1983

*John J. Easton, Jr.*, Attorney General, and *Robert V. Simpson, Jr.*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Neil H. Mickenberg*, Burlington, for Defendant-Appellee.

*Andrew B. Crane*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Defendant-Appellant.

**Gibson, J.** This is an appeal from an order of the District Court of Vermont, Unit No. 2, Chittenden Circuit, sitting as a juvenile court. Under the Juvenile Procedure Act, 33 V.S.A. §§ 631–667, R. S., L. S., and B. S. were found to be children in need of care or supervision (CHINS). *Id.* § 654. The natural father desires custody of these children and appeals the order of disposition transferring custody to the Commissioner of Social and Rehabilitation Services (SRS). *Id.* § 656. We affirm the order of the juvenile court.

Appellant presents three arguments. First, he contends the CHINS petitions should be dismissed because the hearing mandated by § 647(a) was not held within fifteen days of the filing of the petition. Second, he claims the court erred in accepting his judicial admission that the children were in need of care or supervision without first inquiring whether he understood the rights he relinquished and the consequences thereof, Finally, he believes the evidence fails to support the findings that he is incapable of providing an adequate home for the children.

The children's mother attempted suicide on March 14, 1982. Appellant was incarcerated at the time. The children were im-

mediately placed in the temporary custody of SRS, *id.* § 642. Petitions were filed on March 16, 1982, alleging the children were in need of care or supervision, *id.* § 645, and temporary custody was continued pending a hearing on the merits of the petitions.

On March 31, 1982, the parties, including appellant and his counsel, appeared pursuant to § 647. The court found it had jurisdiction based upon the age and residence of each child and noted appellant's denial of the CHINS allegations. The hearing was then continued for one week.

On April 8, 1982, the hearing on the merits of the petitions reconvened. The parties, including appellant and his attorney, were again present. On this day, counsel for the father indicated they would not contest the allegations and entered an admission that the children were, indeed, in need of care or supervision. The admission was made in open court and in the presence of appellant.

Following the bifurcated procedure of the Act, another two-day hearing was held "for the purpose of then considering the disposition to be made in the proceedings." *Id.* § 654(b). The disposition of the children was contested. The mother desired that custody be awarded to SRS in light of her inability to care for the children. Appellant wished to be given custody.

The evidence presented to the court disclosed the following pertinent facts. The father and mother, although never married, lived together from 1974 until 1979. During this time the three children were born. SRS intervened continually in an effort to help the parents develop basic parenting skills. As small babies, two of the children were admitted to the hospital with nutritional problems and for "failure to thrive," even though visiting nursing services were being provided. The children were improperly clothed and constantly hungry for food and affection. They all exhibited severe socialization and learning problems. The family's living conditions were deplorable. "The interior of the trailer and surrounding grounds were covered with animal feces, garbage and filth." The family moved frequently and, at one time, lived in a tent.

During this same time, appellant was incarcerated five times. He had been convicted of crimes twenty-two times in all—many involved alcohol. There is ample evidence that appellant's drinking problem was stress-related. He was often

absent from the household without notice for days at a time and provided little, if any, financial or emotional support for the children.

In December of 1979 he married his present wife who has indicated a willingness to care for R. S., L. S., and B. S. in the two-bedroom trailer she shares with appellant and her own two children. In addition, appellant presented evidence that he has recently been involved in job training, tutoring services and alcohol rehabilitation. There is evidence that he has pursued alcohol counseling with some vigor and will seek employment upon his release from prison. He contends that he is determined to be "a capable person and parent."

I.

Appellant first argues the detention hearing was not held within the fifteen-day period mandated by 33 V.S.A. § 647(a).

> At the time of the filing of the petition, . . . the court shall fix a time for a hearing thereon, which, if the child is in detention or shelter care, shall not be later than fifteen days after the filing thereof . . . .

*Id.* This Court has previously stated that the time scheme of the Act must be complied with. *In re F. E. B.*, 133 Vt. 463, 464, 346 A.2d 191, 192 (1975). A dominant concern on the part of the legislature in promulgating juvenile statutes is to provide for speedy resolution of disputes. *In re B. M. L.*, 137 Vt. 396, 399, 406 A.2d 383, 385 (1979). In cases of juvenile detention it is important to place the children quickly in the safest and most suitable environment and to minimize the possible intrusion upon the parents' constitutional right to family integrity. *In re N. H.*, 135 Vt. 230, 236, 373 A.2d 851, 856 (1977). The fifteen-day rule is a measure intended to protect all of the interests involved, *In re F. E. B.*, *supra*, 133 Vt. at 464, 346 A.2d at 192, and to summon the participation of all parties forthwith.

The rule was complied with in this case. A hearing was "fixed" by the court within fifteen days of the filing of the petition. The hearing was convened within the mandated time on March 31, 1982, and all parties were present. The court

continued the hearing only after ascertaining that the State was not prepared to go forward with its evidence. Furthermore, it was noted that the father was eligible for an extended furlough from prison in the near future. His attorney implicitly agreed to the continuance. Counsel stated, "[f]rankly, my concern is that I think it would be an advantage to everybody if [appellant's] position with the Department of Corrections has been resolved a little bit before the Court makes a finding."

■ The granting of a continuance by the trial court is a matter of discretion. *Granai* v. *Witters*, 123 Vt. 468, 470, 194 A.2d 391, 392 (1963). We cannot say, in light of the State's lack of preparation and appellant's acquiescence, that the court abused its discretion. See, e.g., *Land Finance Corp.* v. *St. Johnsbury Wiring Co.*, 100 Vt. 328, 332–33, 137 A. 324, 326 (1927) (refusal to continue was properly objected to and an abuse of discretion was found).

■ It is not argued here that appellant was precluded by the continuance from presenting a defense or was unable to meet evidence presented against him. See, e.g., *Phelps* v. *Utley*, 92 Vt. 40, 43, 101 A. 1011, 1012 (1917) (new evidence could not be rebutted) ; *State* v. *Pierce*, 88 Vt. 277, 280, 92 A. 218, 219–20 (1914) (witness was unable to appear) ; *Massucco* v. *Tomassi*, 78 Vt. 188, 195–96, 62 A. 57, 59–60 (1905) (party was unable to present defense). Here, the proceedings were convened and then merely suspended to allow the parties additional time to prepare.

■ The courts are cautioned, however, against the indiscriminate use of continuances in juvenile cases. The important policies supporting the speedy resolution of juvenile proceedings outweigh the hardship imposed upon the parties by requiring them to prepare their cases on short notice.

## II.

Appellant also argues the court erred in accepting counsel's judicial admission at the merits hearing, conceding the allegations of the CHINS proceeding without first inquiring of him whether he understood the admission and its consequences. He

claims that, by making the admission, counsel waived appellant's fundamental constitutional rights to family integrity— the "freedom of children and parents to relate to one another in the context of the family . . . ." *In re N. H., supra,* 135 Vt. at 236, 373 A.2d at 856.

Appellant believes, under *Boykin* v. *Alabama,* 395 U.S. 238 (1969), his admission was not knowingly and intelligently made in the absence of personal questioning by the court. *Boykin* was a criminal case and involved the validity of the defendant's plea of guilty. Because a plea of guilty is, in itself, the equivalent of a conviction and "nothing remains but to give judgment and determine punishment," *id.* at 242, the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers have been waived. *Id.* at 243. The Court concluded that when death or imprisonment are at stake, courts must "[canvass] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Id.* at 243-44.

We are not persuaded by appellant's argument for several reasons and find *Boykin* inapposite. Proceedings under the Juvenile Procedure Act are protective, not penal. *In re Rathburn,* 128 Vt. 429, 434, 266 A.2d 423, 426 (1970). Although "[c]onstitutional safeguards must be observed in this class of proceeding," *In re Lee,* 126 Vt. 156, 158, 224 A.2d 917, 919 (1966), we do not find the circumstances so compelling as to require an affirmative waiver by appellant himself. A hearing on the merits of the petition cannot, of itself, prevent appellant from gaining custody of his children. The sole issue at a merits hearing is whether the children are in need of care or supervision. The ultimate placement awaits the disposition hearing. Indeed, not all CHINS findings eventually result in the loss of parental custody at the disposition stage. See, e.g., *In re N. H., supra,* 135 Vt. at 235-37, 373 A.2d at 856-57 (father granted custody after a CHINS determination).

Appellant was accorded the basic constitutional protections to which he was entitled. He was present with counsel both on March 31, 1982, when counsel denied the CHINS allegations and again on April 8, 1982, when his attorney entered the admissions on his behalf. Judicial admis-

sions made by an attorney at trial for the purpose of dispensing with the formal proof of some fact are "binding upon their clients . . . and . . . are in general conclusive." *United States* v. *United States Fidelity & Guaranty Co.*, 83 Vt. 278, 281, 75 A. 280, 281 (1910.) The rule is especially applicable when the admission is made in open court and in the client's presence. *United States* v. *Adams*, 422 F.2d 515, 518 (10th Cir. 1970). The court was correct in accepting counsel's judicial admission at the merits hearing where the termination of residual parental rights was not at issue.

## III.

The final issue before the Court is whether the evidence supports the finding that appellant is an unfit parent, demonstrably incapable of providing an appropriate home for his children. We note the court made lengthy and detailed findings in this matter.

Findings of fact must stand unless "the trial court exercised its discretion on grounds or for reasons clearly untenable or clearly unreasonable." *In re Proceedings Concerning a Neglected Child*, 130 Vt. 525, 537, 296 A.2d 250, 257 (1972). Although "the juvenile court is not free to weigh and compare the merits of various possible solutions free of any regard for compelling parental rights," *In re N. H., supra,* 135 Vt. at 237, 373 A.2d at 856, the court has "substantial leeway in framing a disposition order that will serve the purposes of the statute." *Id.*

We find no abuse of discretion in this case. The court found that both parents were "tragically unsuitable" and "to return these children to either parent at this time would imperil the children's safety, morals, health and happiness." Although we applaud appellant's obvious change of heart in regard to the children, we find the court's conclusion amply supported by the evidence. Appellant's lack of emotional and financial support, continual absences, chronic alcoholism and repeated incarceration all undermine his plea for custody.

*Affirmed.*