## In re J. E. G.

[476 A.2d 130]

No. 237-81

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed April 6, 1984

310

*John J. Easton, Jr.,* Attorney General, *Elizabeth Grant Rome,* Assistant Attorney General, and *James Carroll,* Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Andrew B. Crane,* Defender General, *William A. Nelson,* Appellate Defender, and *Nancy E. Kaufman,* Acting Appellate Defender, Montpelier, for Defendant-Appellant.

**Billings, C.J.** This is an appeal from a judgment of the Chittenden District Court, sitting as a juvenile court, adjudicating the juvenile appellant, J. E. G., a delinquent child and transferring custody to the Commissioner of Corrections. 33 V.S.A. § 657(a)(3). The issues presented for our review are: (1) whether the juvenile's confession should have been suppressed because it was the product of custodial interrogation, taken in violation of the constitutional safeguards articulated in *Miranda* v. *Arizona,* 384 U.S. 436 (1966); and (2) whether the juvenile's right to a speedy resolution of the delinquency proceedings was violated.

On January 24, 1981, J. E. G., a thirteen year old, was taken into custody by the South Burlington Police Department, 33 V.S.A. § 639(1), as a suspect in the setting of two to four simultaneous fires at a neon sign company in South Burlington. J. E. G.'s father was notified and, after his arrival at the police station, J. E. G., in the presence of his father, was advised of his *Miranda* rights. J. E. G., with the assent of his father, agreed to police questioning, during the course of which he denied responsibility for the fires. A temporary detention hearing was held, and, following the issuance of a temporary detention order, 33 V.S.A. § 642, J. E. G. was turned over to two deputy sheriffs for transportation to the Waterbury juvenile detention center.

The court found that, while in the car, J. E. G. initiated a conversation with the officers. In response to his expression of anxiety over being kept at the juvenile detention center, the officers assured him he would be well treated. J. E. G. asked the officers if they knew what the penalty for arson was, to which they responded that they did not. He then told the offi-

cers that earlier in the day he had had an argument with his father, that his father had made him take some garbage to the dump and that on his way back from the dump, he stopped at the sign company and set the fires. According to the testimony of the officers, J. E. G. then stated that he "didn't think it would burn." To this statement one of the officers responded "what." Aside from this "what," and the direct responses to J. E. G.'s concerns about Waterbury and the penalty for arson, the only other responses made to J. E. G. by the officers were yeses and noes interspersed throughout J. E. G.'s conversation. The trial court concluded that J. E. G. was in custody during the ride to Waterbury but was not subject to interrogation and that the statement he made concerning setting the fires was voluntary.

J. E. G. contends that the officer's "what" constitutes custodial interrogation and because there had been no renewal of *Miranda* warnings the court should have suppressed his confession. Assuming, arguendo, that the "what" amounted to interrogation, the record clearly shows, and the court so found, that J. E. G.'s inculpatory statements were made prior to rather than in response to or as a result of the officer's "what." The court found, and the finding is not refuted by J. E. G., that he initiated the conversation with the officers during which he stated he set the fires. He points to no other statements or aspects of the officers' conduct or demeanor amounting to an " 'interrogation environment' created by the interplay of interrogation and custody" that subjugated him to the will of the officers. *Rhode Island* v. *Innis*, 446 U.S. 291, 299 (1980).

██ We are mindful that the appellant here is a juvenile and that we are required to exercise special caution when the issue of a juvenile confession arises. *In re Gault,* 387 U.S. 1, 45 (1967). This is particularly so when, as here, the juvenile makes admissions without the presence of counsel, parent or other interested but independent adult. *Id.* at 55; *State* v. *Piper,* 143 Vt. 468, 472, 468 A.2d 554, 556 (1983); *In re E. T. C.,* 141 Vt. 375, 379, 449 A.2d 937, 940 (1982). Nevertheless, we are unable to characterize the interplay between the officers and J. E. G. as custodial interrogation. Appellate counsel for J. E. G. suggests that the officers knew or should

have known that J. E. G. was "not a hardened, street-wise delinquent, but a boy who was both naive and frightened" and therefore particularly vulnerable to the often intimidating and suggestive atmosphere inherent in police custody. Even so, there simply is no evidence of that "measure of compulsion above and beyond that inherent in custody itself" amounting to interrogation as defined by the United States Supreme Court. *Rhode Island* v. *Innis*, supra, 446 U.S. at 300. On the facts of this case, we concur with the trial court's conclusion that J. E. G.'s confession was admissible because it was "given freely and voluntarily without any compelling influences . . . ." *Miranda* v. *Arizona, supra,* 384 U.S. at 478; *State* v. *White,* 142 Vt. 73, 76–77, 451 A.2d 1137, 1139 (1982).

J. E. G. next argues that he was denied his right to a speedy resolution of the delinquency proceedings as guaranteed by the juvenile procedures act, Chapter 12, Title 33, and as articulated by our holding in *In re B. M. L.,* 137 Vt. 396, 406 A.2d 383 (1979). J. E. G. first argues that the delay between the State's filing of the delinquency petition on January 26, 1981, and the hearing on the petition of February 25, 1981, violated the express requirement of 33 V.S.A. § 647 that the hearing on the delinquency petition "shall not be later than fifteen days after the filing" of the delinquency petition. In addition, he contends that the aggregate delay between January 24, 1981, the date of the issuance of the temporary detention order, and May 18, 1981, the date of the disposition hearing and order, violated the speedy resolution intent of Chapter 12, Title 33.

We note first that appellant failed to raise either aspect of his speedy resolution argument below. We have often held that matters not raised below, even of a constitutional significance, will not be considered by this Court on appeal. *Rassman* v. *American Fidelity Co.,* 142 Vt. 623, 625, 460 A.2d 461, 462 (1983). Recognizing, however, the protective nature of Chapter 12, Title 33, proceedings, with their overriding and primary concern for the welfare of the affected child, *In re N. H.,* 135 Vt. 230, 234, 373 A.2d 851, 855 (1977), we will address appellant's argument. See, e.g., *State* v. *Cain,* 126 Vt. 463, 470, 236 A.2d 501, 506 (1967) (even when issue not raised below, Court "may consider error for the first time on

appeal when the question affects the public interest").

The first prong of appellant's argument concerns the interpretation to be given to 33 V.S.A. § 647(a). This section provides in pertinent part:

> At the time of the filing of the petition, . . . the court shall fix a time for a hearing thereon, which, if the child is in detention or shelter care, shall not be later than fifteen days after the filing thereof . . . .

The State filed its delinquency petition, 33 V.S.A. § 645(b), on January 26, 1981, at which time the court ordered J. E. G.'s continued placement at the Waterbury detention center, and set hearing on the petition for February 4, 1981. On February 4, the court convened for the purpose of hearing the petition, but the appropriate authorities had, for some unexplained reason, failed to transport J. E. G. from Waterbury to the court. The court ordered the hearing continued. The next day, February 5, the court convened again with all parties present. The court found jurisdiction, and probable cause. Substitute counsel for J. E. G. entered a denial to the delinquency petition. The court then continued the hearing, apparently to allow J. E. G.'s regular attorney time to prepare. The hearing reconvened on February 25, 1981.

 Although both appellate counsel for J. E. G. and counsel for the State assume that the merits hearing required to be held by § 647(a) was not held until February 25, this conflicts with our holding in *In re R. S.*, 143 Vt. 565, 469 A.2d 751 (1983). There we ruled that the hearing required by § 647(a) occurs when all parties are present, jurisdiction is found, and an entry of a denial or admission to the petition is made. *Id.* at 569, 469 A.2d at 754. In the instant case, this occurred at the February 5 hearing, well within the 15 day limit mandated by § 647(a).

J. E. G. next argues that the aggregate delay of 80 days between the January 24 temporary detention order and the May 18 disposition hearing and order, while not in violation of any specific statutory requirement of Chapter 12, nevertheless violates the legislative intent that proceedings under Chapter 12 be resolved in a speedy manner. *In re B. M. L.*, *supra*, 137 Vt. at 399, 406 A.2d at 385.

\ ■ · A review of the procedural history of this case reveals that of these eighty days, thirty days fell within the express statutory requirements found in Chapter 12. See 33 V.S.A. § 643 (detention hearing shall be held within forty-eight hours of the filing of a temporary detention order) ; § 647 (hearing on the delinquency petition shall not be later than fifteen days after filing of petition if child in detention) ; § 654(b) (disposition hearing shall be heard no later than thirty days after court makes finding of delinquency). Counsel for J. E. G. specifically requested additional preparation time amounting to another twenty-six days. The remaining twenty-four days were the result of a sixteen day break between the reconvened merits hearing on February 25 and its conclusion on March 19, and the eight days it took the court to issue its findings and conclusions following the filing of proposed findings by J. E. G. and the State. On these facts, we do not find a violation of J. E. G.'s right to a speedy resolution of the delinquency proceedings against him.

■ Once again, however, we remind the courts that "[t]he important policies supporting the speedy resolution of juvenile proceedings outweigh the hardship imposed upon the parties by requiring them to prepare their cases on short notice." *In re R. S., supra,* 143 Vt. at 570, 469 A.2d at 754.

*Affirmed.*