**Connie ROBISON**

v.

**Susan R. VIA and Harold Harrison.**

**Civ. A. No. 83–17.**

United States District Court,
D. Vermont.

May 27, 1986.

John L. Kellner, Langrock Sperry Parker & Wool, Middlebury, Vt., for plaintiff.

David A. Barra, Paul, Frank & Collins, Burlington, Vt., for defendant Via.

Mark Kolter, and John J. Zawistoski, Ryan, Smith & Carbine, Rutland, Vt., for defendant Harrison.

## OPINION AND ORDER

HOLDEN, Senior District Judge.

This proceeding had its beginning as a civil rights action brought under the provisions of 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343. The plaintiff, Connie Robison, is the mother of two young children, Michael and Julia, who were in her custody on August 26, 1981. The complaint charges the children were unlawfully taken from her custody by the defendant Susan Via, who at the time held the office of Assistant State's Attorney for Chittenden County, and the defendant Harrison, who was then a Vermont state police officer.

Discovery was conducted under the direction of the United States Magistrate by referral, pursuant to 28 U.S.C. § 636(b)(1)(A) as implemented by Local Rule 14, Part II, then in effect. After the cause was returned to this court by the magistrate, the plaintiff was granted leave to amend her complaint to charge in Count II a battery upon her person by the defendant Harrison. A third count alleges intentional infliction of emotional distress on the part of both defendants. Both defendants filed amended answers which were followed by separate motions for summary judgment.

After hearing oral argument on April 11, 1986, the combined motions were denied without written opinion. On April 11, 1986 the defendant Via filed a timely well-founded motion to amend the ruling. The defendant Harrison joined by requesting reconsideration. The parties were granted leave to submit further written argument and supporting affidavits in an effort to settle the question of qualified immunity as a matter of law in the light of *Mitchell v. Forsyth*, —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

### Facts Established by the Record

The defendants Via and Harrison have submitted separate affidavits which underlie their respective motions for summary judgment. This submission is substantially in accord with the defendant Harrison's

statement of material facts filed earlier and prior to the April 11th hearing, as required by our Local Rules of Procedure 5C I. The plaintiff has not controverted her opponents' version of the underlying facts by affidavits. She relies mainly on her deposition of November 17, 1983 to oppose the facts asserted by the defendants. In any event, the facts which follow are not seriously disputed for the purpose of consideration of the pending motions within the teaching of *Harlow v. Fitzgerald*, 457 U.S. 800, 816–818, 102 S.Ct. 2727, 2737–2738, 73 L.Ed.2d 396 (1982), as explained in *Mitchell, supra*, to determine whether summary disposition is justified on the record or whether the case shall proceed to trial.

The defendant Susan R. Via, on August 26, 1981, received a call from Stephen Burke, then a detective in the South Burlington Police Department, concerning suspected child abuse. The information originated with Mrs. Sarah Orrill of Williston, Vermont. The defendant Via called Mrs. Orrill to arrange an interview. Mrs. Orrill informed Ms. Via that her young daughter, Jennifer, had told her that Julia Robison, then aged 9, had been incestuously victimized by her father Roy Robison. Mrs. Orrill requested that her interview and any questioning of her daughter be performed by a female state trooper. Since the only policewoman at the Colchester barracks was not working that day, the defendant Via decided to accompany the defendant Harrison to the interview. Mrs. Orrill accepted this arrangement.

The interview of Mrs. Orrill and her daughter confirmed that Julia Robison had told Jennifer and another schoolmate, Ellen Vass, of the abusive experiences. The defendants Via and Harrison then interviewed Mrs. Vass and her daughter. The Vass interviews were to the effect that Julia Robison had given a similar account to the Vass child and that the alleged abuse had commenced when Julia was six. Mrs. Vass went on to state to her interviewers that she had reported this history to a Dr. Alice Wright, whom she had consulted for treatment of her daughter Ellen. Dr. Wright told Mrs. Vass she would report the

Robison situation to the State Social and Rehabilitation Services. Either the Vass child or Jennifer Orrill added that Michael Robison had been severely disciplined and on one occasion struck in the face with a belt buckle by his father.

After these interviews, the defendants proceeded to question the plaintiff at the Robison home. The plaintiff's first concern at the sight of the police cruiser and its occupants was that her children had been in an accident. The defendants informed the plaintiff that the purpose of the visit was to question her about her husband's alleged sexual conduct with Julia. The plaintiff declined to discuss the matter, other than to say she had no knowledge of the subject except that Michael had reported on one occasion seeing his sister in bed with her father. When the defendants stated they wanted to question her children, the plaintiff made it clear she wanted the children to be questioned at home and in her presence. She stated they were expected home within a matter of minutes.

The defendants, believing Mrs. Robison would seek to suppress the truth if she were present when the children were questioned, departed to interview the children away from the Robison home. The plaintiff pursued the police cruiser in haste to the Orrill home, where she knew the children were playing. When the plaintiff arrived at the scene, her son Michael was seated in the cruiser talking to Ms. Via. Trooper Harrison was talking with Michael's sister, Julia, outside the vehicle. Both children were excited; both were crying.

When the plaintiff halted her vehicle, she was loud, angry and abusive. She directed the children to get into her car and they obeyed her command. Harrison told the plaintiff that the children were being taken to the police barracks. The plaintiff responded that she would not allow the children to accompany him anywhere. A scuffle ensued between the plaintiff and Harrison, when, according to the defendant Via, the plaintiff "rather hysterically attempted

to remove the children from the scene." Via obtained the keys from the ignition in the Robison vehicle. Michael broke away, but was returned to the police cruiser. The plaintiff wrapped her arms around Julia. The defendant Harrison forcibly removed Julia to the police cruiser. Harrison threw the plaintiff's car keys some distance from the vehicle. When the plaintiff hastened to retrieve them the defendants sped away from the scene at approximately 3:40 p.m.

Upon their arrival at the state police barracks, according to the defendant Via's trial brief, Julia was questioned for approximately forty-five minutes. It further appears:

> That afternoon the court was called from the police barracks. Since a trial was going on, there was no judge available

until Judge Bryan [1] was reached at home that evening prior to six o'clock.

Judge Bryan authorized, by telephone, a temporary detention until a further detention hearing was held on August 27, 1981. At the hearing the temporary detention of the Robison children was continued. During the course of this proceeding, petitions alleging the Robison children were in need of care or supervision, as provided in 33 V.S.A. § 645, were filed with the court.[2] The petitions were not heard on the merits, but were left pending to await further proceedings.

On September 2, 1981, at a hearing concerning the parents' visitation rights, the plaintiff and her husband appeared with counsel. The mandatory 15 day requirement for children in detention was waived.[3]

1. Honorable Alden T. Bryan, then a district judge until he was appointed to the office of superior judge on July 19, 1982. 33 V.S.A. § 633(a) provides exclusive jurisdiction over all proceedings concerning any child alleged to be in need of care or supervision. Juvenile court means the district court. On August 26, 1981 there were fifteen district judges serving the State of Vermont as judges of the juvenile courts.

2. The pertinent provisions of 33 V.S.A. § 645 are found in the following subsections:

(a) Upon the request of the commissioner of social and rehabilitation services, a licensed child caring agency, family service agency or the superintendent of the school district in which the child is enrolled, the state's attorney having jurisdiction shall prepare and file a petition alleging that a child is in need of care or supervision. He shall also file such petition upon the request of any person who has knowledge of the facts alleged, upon a showing by such person included in the petition that he had referred the matter to the commissioner of social and rehabilitation services not less than fifteen nor more than thirty days prior to the date of his request to the state's attorney and that the commissioner had not requested the state's attorney having jurisdiction to file a petition under this chapter with respect to that child.

\* \* \* \* \* \*

(c) In the case of an allegation that a child is in need of care or supervision, the commissioner of social and rehabilitation services shall deliver to the state's attorney having jurisdiction prior to the hearing on the petition a report containing the record of the facts and circumstances of the case.

3. § 647. Date of hearing on the petition; summons

(a) At the time of the filing of the petition, or the effecting of the transfer under section 635 of this title, the court shall fix a time for a hearing thereon, which, if the child is in detention or shelter care, shall not be later than fifteen days after the filing thereof, and shall by order direct the issuance of a summons addressed to the parents, guardian, custodian, relative or person described in a petition pursuant to section 646 of this title, the state's attorney having jurisdiction, the commissioner of social and rehabilitation services in the event the petition alleges that a child is in need of care or supervision, the commissioner of corrections in the event the petition alleges delinquency, and such other persons as appear to the court to be proper or necessary parties to the proceedings, requiring them to appear before the court at the time fixed to answer the allegations of the petition. A copy of the petition, if one is filed, shall accompany the summons.

(b) The court shall endorse upon the summons an order directing the parents, guardian, custodian, relative or person referred to above to appear personally at the hearing and in the case of an allegation that a child is in need of care or supervision under paragraph (C) of section 632(a)(12) of this title shall, and in the case an allegation that a child is in need of care or supervision under paragraphs (A) and (B) of section 632(a)(12) of this title may, direct any person having the custody or control of the child to bring the child to the hearing.

(c) The summons shall state that each party to the proceeding is entitled to counsel in the proceedings and that the court will appoint

The waiver was confirmed on September 9, 1981. At a later hearing on October 7, 1981, the waiver was withdrawn. On the following day, the court, Honorable John T. Connarn presiding, ordered the children to be released to the custody of the plaintiff. The paternal parent was ordered out of the Robison home and ordered not to visit or communicate with the subject juveniles.

On October 8 representatives of the State dismissed the pending juvenile petitions. New petitions were filed to begin the proceedings anew on the same day. Hearings on the renewed petition were convened on October 21, 1981 and from time to time in November and December.

On January 19, 1982 the juvenile court adjudged the children in need of care and supervision. The children were placed in the custody of the State Department of Social and Rehabilitation Service on February 10, 1982. An appeal to the supreme court of Vermont, which followed, resulted in the reversal of the adjudication of the juvenile court on evidentiary grounds. *In re M.W.R. and J.L.R.*, 143 Vt. 6, 458 A.2d 1132 (1982). For the purpose of the pending motion, it is not essential to recount the subsequent history of these protracted juvenile proceedings.

### Discussion

Although the facts stated above are scant and do not attempt to constitute the entire controversy, the essential ingredients are sufficient to present questions of law advanced by the pending motions. It is clear that the defendant Via, in her official capacity as assistant state's attorney

for Chittenden County, on August 26, 1981 accompanied Trooper Harrison to investigate a report of the child abuse of Julie Robison by her father. The official report submitted with Harrison's affidavit labels the subject of the investigation "sexual assault." No juvenile proceedings were pending at the time the defendants took the Robison children into their custody.[4]

The Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976) held—

> that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.

When the Robison children were detained and taken into custody by the defendants, they were not accused nor were they subject to investigation of criminal conduct or wrongdoing on their part.

The law of Vermont recognizes and maintains a distinct difference between proceedings involving juvenile delinquency as opposed to child neglect. The former is criminal in nature. Action by the state to safeguard the subject child from neglect and abuse is protective and akin to civil proceedings. *In re J.R., Juvenile*, —— Vt. ——, 508 A.2d 719 (1986); *In re Proceedings Concerning a Neglected Child*, 130 Vt. 525, 533–34, 296 A.2d 250 (1972).

The activities undertaken by both defendants were entirely outside the framework of any criminal prosecution. The detention of the plaintiff's children was prior to the commencement of any judicial function by court or counsel. The defendant Via was cast in the role which the Court in *Imbler*

---

counsel under the conditions prescribed by law.

(d) If the petition alleges under oath that the conduct, condition or surroundings of the child are endangering his health or welfare or those of others, or that he may leave or be removed from the jurisdiction of the court or will not be brought to the court, notwithstanding the service of the summons, the court may endorse upon the summons an order that a law enforcement officer shall serve the summons and shall take the child into immediate custody and bring him forthwith to the court under the provisions of section 639 of this title. An order of the court under the subsec-

tion (d) of this section shall, however, constitute an order filed, under section 641 of this title, for the purposes of the holding of a detention hearing and the disposition thereof under section 643 of this title.

(e) A party may waive service of summons by written stipulation or by voluntary appearance at the hearing.

4. Juvenile proceedings in Vermont are commenced only by transfer from another court or by filing an appropriate petition. 33 V.S.A. § 644.

referred to as an "investigative officer rather than that of advocate." 424 U.S. at 431, 96 S.Ct. at 995.

Justice White's concurring opinion makes it entirely clear that the immunity claimed in the present case was left undecided in *Imbler*:

> [I]nsofar as the majority's opinion implies an absolute immunity from suits for constitutional violations other than those based on the prosecutor's decision to initiate proceedings or his actions in bringing information or argument to the court, I disagree.

*Id.* at 441, 96 S.Ct. at 1000.

Until Judge Bryan was reached at home, Ms. Via did not become involved as a prosecutrix in a judicial proceeding. To the contrary, she and Trooper Harrison, whom she accompanied as a substitute policewoman were involved in investigating a report of alleged criminal conduct by the children's father, rather than juvenile delinquency on the part of the children. It was only when Judge Bryan was confronted with the suspected need of the juveniles, as abused or neglected children, that the judicial power of the state became engaged.

When Judge Bryan received and entertained the request by telephone, the defendant Via participated in the judicial function. It was then, and not before that point in time, that the protection of prosecutorial immunity attached. *E.g., Mitchell v. Forsyth,* — U.S. at —, 105 S.Ct. at 2812–2814 (Attorney General not absolutely immune from suit arising out of national security function); *Taylor v. Kavanagh,* 640 F.2d 450 (2d Cir.1981) (Absolute prosecutorial immunity does not extend to investigative acts).

Since Ms. Via and Trooper Harrison were not acting within the protection of prosecutorial immunity when the alleged constitution deprivation occurred, the defendants are entitled to avoid trial only

> so long as [their] actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Mitchell,* — U.S. at — – —, 105 S.Ct. at 2814 (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738).

*Investigative Immunity Concerning Child Abuse*

Ms. Via goes on to urge that she is entitled to absolute immunity "... not because she was a prosecutor, but rather because she was an investigator of allegations of child abuse...." (Def. Via's motion to vacate, April 17, 1986). The application of this doctrine would, in essence, place all persons involved in the sensitive area of child abuse beyond the reach of responsibility for excessive conduct under the Civil Rights Act.

The court finds no reliable authority to support this claim of subject matter immunity. In *Walden v. Wishengrad,* 745 F.2d 149 (2d Cir.1984) the court of appeals recognized "that absolute immunity should be accorded only in exceptional cases." The opinion by Judge Meskill observed that the responsibilities of an attorney employed by the Department of Social Services for Monroe County in upstate New York in procuring a judicial warrant for the arrest of a recalcitrant witness before the Family Court were similar in importance to those of a prosecutor's office in the criminal justice system. The court went on to hold the attorney in the Family Court proceeding was entitled to absolute immunity in the suit by the disobedient witness for damage caused by her arrest and prosecution. *Id.* at 152. To the same effect is *Whelehan v. County of Monroe,* 558 F.Supp. 1093 (W.D. N.Y.1983) (Social service worker in deciding whether to initiate court proceedings in cases of suspected child abuse is entitled to absolute protection). *Cf. Doe v. County of Suffolk,* 494 F.Supp. 179 (E.D.N.Y.1980) (Social worker under New York Social Service Law functions as a policeman, rather than a prosecutor and is entitled to qualified immunity).

The defendant Via's reliance on *Pepper v. Alexander,* 599 F.Supp. 523 (D.N.M. 1984) (Bratton, C.J.) is supportive of her contention to the extent that social workers are immune from damage liability for the

decision "to apply for termination of parental rights...." *Id.* at 526. That is not to say the court held the immunity extended to conduct before the termination hearing. As to that aspect of the *Pepper* case, the plaintiff had voluntarily given up temporary custody of her children. Furthermore, the claim of constitutional deprivation prior to the termination hearing was barred by the statute of limitations.

■ Although the court is entirely mindful of the serious importance of dealing with problems of child abuse, the notion that they may be pursued without restraint in the investigative phase, before any complaint has been presented to the juvenile courts, amounts to blanket immunity. A similar suggestion in the area of national security was rejected in *Mitchell v. Forsyth*, — U.S. at ——, 105 S.Ct. at 2812–2814. It is not acceptable in the context of this action. Although the defendants are immunized from liability after judicial intervention was obtained, their actions prior to six o'clock in the evening of August 26, 1981 require further inquiry. Until that hour the acts and conduct of the defendants were not "... intimately associated with the judicial phase of the juvenile process" in terms of absolute immunity. *Malley v. Briggs*, — U.S. ——, ——, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

■ The defendants' entitlement to immunity from trial of this § 1983 action, as the court views the record, is narrowed to this: whether the defendant Via, acting as an attorney investigator, and her codefendant Harrison, performing as a reasonably well trained state police officer, should have known that the taking of the Robison children from their mother was in violation of "clearly established statutory or constitutional rights...." *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736. The measure to be applied is the standard of reasonable professional judgment.

The Due Process Clause of the Fourteenth Amendment protects a parent's right to a hearing before she is deprived of the care, custody and control of his or her children. *E.g., Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.1977).

The statutory law of Vermont in effect on that date, concerning juveniles and related judicial proceedings, prescribes the procedure to be followed to accomplish the temporary detention and removal from parental custody of a child alleged to be in need of care and supervision.

§ 639. *Taking into custody*

A child may be taken into custody:

(1) Pursuant to the laws of arrest of this state,

(2) Pursuant to an order of the juvenile court under the provisions of this chapter,

(3) By a law enforcement officer when he has reasonable grounds to believe that the child is in immediate danger from his surroundings, and that his removal is necessary for his protection.

(4) By a law enforcement officer when he has reasonable grounds to believe that the child has run away from his parents, guardian, or legal custodian.

33 V.S.A. § 639.

The record at hand restricts the application of section 633 to the situation of immediate danger which makes it necessary for removal of custody for the child's protection under subsection (3). That is the theme of justification advanced by the defendants.

The flaw in the defendants' argument is twofold. There was no immediate danger of paternal abuse since the father was not present. Danger from the children's mother was created, in part at least, by the defendants' disregard of the plaintiff's request that the questioning of her children be done in her presence in their own home. It seems plausible that the investigators had doubts about this method of interrogation. But, rather than take the pains to procure a temporary detention order from any of the district judges in the area,[5] they

---

5. The record discloses no shortage of district judges. It suggests only that one of the fifteen

took it upon themselves to take custody without the benefit of judicial authorization. In any event, the plaintiff's misgivings that the defendants would abide by the conditions she imposed were well founded. The defendants ignored the plaintiff's request to aid their investigative purpose. The risk of doing so, without court authorization, was theirs.

The presence of danger, in and of itself, does not provide vindication for holding the children out of reach of their mother. Nor did investigative purposes discharge the defendants' duty under 33 V.S.A. § 640.

> § 640 *Release or delivery to court*
>
> The person taking a child alleged to be a delinquent child or a child in need of care or supervision into custody shall immediately and without first taking the child elsewhere:
>
> (1) Release the child to his parents, guardian or custodian, or
>
> (2) Deliver the child to the juvenile court and immediately file written notice thereof with the court, together with a statement of the reason for taking the child into custody.

The statutory command to any person taking a needy child into custody is to *"immediately and without first taking the [child] elsewhere* ... [d]eliver the [child] to the juvenile court." (emphasis added). There is nothing ambiguous or doubtful about this text; the language is clear and unequivocal. This mandate has been in effect since 1968. It concerns a subject reasonably competent enforcement officers should know in dealing with juveniles.

Here the defendants took the Robison children from their mother's custody and sequestered them in the police barracks until at least six o'clock in the evening in disobedience to the procedure prescribed by the law of Vermont. This aspect of the defendants' conduct also presents a substantial claim of violation of the Civil Rights Act. Whether or not Due Process was later accorded the plaintiff does not

district judges was engaged in a trial during the afternoon of August 26, 1981. See text and note

cure shortages prior to the time judicial intervention took over.

The doctrine of "objective reasonableness" of an official's conduct calls upon the court, on summary judgment, to determine

> ... not only the currently applicable law, but whether that law was clearly established at the time an action occurred. ... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained.

*Harlow v. Fitzgerald, supra,* 457 U.S. at 818–19, 102 S.Ct. at 2738.

As we have seen, a natural parent has a clear right to the essentials of due process before custody of her children can be disrupted by the state. The statutory law of Vermont makes it equally clear that a child cannot be taken or detained by a law enforcement officer without reasonable grounds "to believe that the child is in immediate danger," 33 V.S.A. § 639(3); and once the children were removed from the zone of peril, § 640(2) plainly required the defendants to deliver the children to the juvenile court, rather than the state police barracks.

The threshold question of defendants' immunity from trial must be resolved against their motion for summary judgment. It remains to be seen whether the defendants can prove that by force of the extraordinary circumstances of August 26th, they "neither knew nor should have known of the constitutional and statutory standard[s]" required of them in the detention of young children for interrogation without court approval. This is a problem of proof that must be determined at the trial. *Malley,* — U.S. at —, 106 S.Ct. at

in the margin above.

1100; *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2738.

*Assault and Battery Charged Against Defendant Via*

The present motions of the defendant Via go beyond the immunity question to seek summary judgment in her favor on Count II of the amended complaint. The reason advanced by the movant is that this count states no basis for liability against the defendant.

 The amended complaint in paragraph 9 charges "that when [the complainant] arrived at the scene [where the children were taken into custody] ... Defendant Harrison shoved and struck Mrs. Robison...." Count II, labeled "Battery," enlarges upon this allegation to state that "[b]y virtue of the conduct alleged in paragraph 9, Defendant Harrison's action constituted a battery upon the person of the Plaintiff." Ms. Via moves the court to dismiss Count II as to her, contending there is no legal basis for holding her liable on this charge. Her affidavit, submitted in support of this contention, avers that at "no time did I touch Mrs. Robison during her struggle to remove the children from the scene." This averment is contested by the plaintiff's deposition of November 17, 1983. The plaintiff testified that "... she [Via] and Harrison were pushing and pulling, trying to separate Julia from me, prying at your [sic] fingers or that kind of thing." Deposition of Connie Robison at 49. Accordingly, Via's motion for summary judgment as to Count II is denied.

### Conclusions

In sum, the defendants are not entitled to absolute immunity for their conduct during the afternoon of August 26, 1981. The claims against the defendants Via and Harrison to recover for injuries sustained after judicial intervention by the juvenile court on the evening of August 26, 1981, must be dismissed. The court holds that the defendants are immune from trial on these claims. The defendants' motion for summary judgment as to this aspect of the suit is granted pursuant to Rule 56(d), Federal Rules of Civil Procedure.

The court treats the defendant Via's motion to dismiss Count II, as to her, as one for summary judgment under Rule 12(b). The motion in that context must be denied.

This action will proceed to trial on the limited questions of (1) the defendants' liability to the plaintiff for the taking of Michael and Julia Robison into custody and detention between the approximate hours of three and six o'clock on August 26, 1981; and (2) the extent of the damages the plaintiff may be entitled to recover for the deprivation of custody of her children during this time period.

It is SO ORDERED.